**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSHUA JAY BELLO,

Plaintiff,

v.

Case No.: 3:25-cv-655-WWB-SJH

NATUS MEDICAL INDORPORATED,

Defendant.
____________________________________/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Sanctions Pursuant to 28 U.S. Code § 1927 (Doc. 39) and Plaintiff's Counsel's Response in Opposition (Doc. 41). For the reasons set forth below, Defendant's Motion will be denied.

## I. BACKGROUND

Plaintiffs Joshua Jay Bello and Laura Wright[1] alleged throughout this litigation that Bello underwent brain surgeries at Wolfson Children's Hospital ("**Wolfson**") on April 15 and 21, 2021, to improve his epileptic seizures; that the surgeries failed because of an unannounced and faulty update Defendant Natus Medical Incorporated ("**Natus**") ran on its NeuroWorks software system a few days before the second surgery; and that the failed surgeries scarred Bello's brain, leaving him ineligible for similar surgeries in the future. (*See generally* Doc. Nos. 6, 12, 31). Plaintiffs also alleged that Natus, despite knowing

[1] The Court refers to Bello and Wright, Bello's mother and lead attorney, collectively as "Plaintiffs." Though Wright voluntarily dismissed herself as a plaintiff shortly after filing the Amended Complaint, at the time this action was initiated in state court, Wright was a named plaintiff in the litigation. (*See* Doc. 1-2 at 1; Doc. 6 at 1, 18; *see also generally* Doc. Nos. 12, 13).

that the update had caused NeuroWorks to malfunction, failed to warn hospitals and practitioners of the problem. (Doc. 6, ¶¶ 13, 20–21; Doc. 12, ¶¶ 14, 22–24; Doc. 31, ¶¶ 14, 22–24). Plaintiffs allegedly learned this information from Tiffani Higdon, a Wolfson employee, who called an unknown employee of Natus on the date of Bello's second surgery to troubleshoot NeuroWorks. (Doc. 6, ¶ 13; Doc. 12, ¶ 14; Doc. 31, ¶ 14).[2] Natus's service log for Wolfson reflects that Higdon did place a call to Natus on April 21, 2021. (Doc. 39-18 at 4).

After engaging in informal discussions with Natus, (*see generally* Doc. 39-18), Plaintiffs initiated this action in state court in March 2025, seeking damages for strict liability, negligence, and negligent infliction of emotional distress, (*see generally* Doc. 6). Throughout litigation, Natus provided Wright with evidence which, Natus argued, showed that no software update took place in the days preceding Bello's surgeries, or even in April 2021. (*See generally* Doc. Nos. 39-10, 39-11, 39-13). Natus sent its "First Letter" (Doc. 39-10) to Wright roughly four months after she filed Plaintiffs' Amended Complaint in this Court. The First Letter requested that Wright voluntarily dismiss the case within fourteen days, lest Natus pursue recovery of the cost of its defense. (*Id.* at 4). Alongside the First Letter, Natus produced an Order Confirmation (Doc. 39-5) reflecting a June 1, 2021 ship date for its planned NeuroWorks software update at Wolfson's; a Detailed Equipment History (Doc. 39-8) and Work Order (Doc. 39-9) documenting troubleshooting Wolfson performed on its "Natus EEG system" in April 2021 and reflecting a properly working system as of June 1, 2021; and two additional Work Orders (Doc. Nos. 39-6, 39-

[2] Wright and Bello simultaneously alleged that Bello's "surgeon" discovered the malfunction "by calling Natus during a brain surgery." (Doc. 6, ¶ 20; Doc. 12, ¶ 22; Doc. 31, ¶ 53). The record appears unclear as to whether Higdon is a surgeon.

7) reflecting that Wolfson's in-house IT support, rather than Natus, updated Wolfson's NeuroWorks' software in 2018 and 2024.

Natus represented to Wright that the Order Confirmation showed that no software update occurred "'a few days earlier' than [] Bello's April 15, 2021 [] procedure, contrary to the Amended Complaint's allegations." (Doc. 39-10 at 3). Natus also argued that the Detailed Equipment History and first Work Order "demonstrate[d] that the alleged problems with the EEG were ***not*** confirmed to be a software issue . . . contrary to your allegations." (*Id.*). Wright responded that "the software update happened during [Bello's April 15, 2021] procedure, not before it," and argued that it was "entirely disingenuous to say that th[e] software update did not take place simply because the hospital was not alerted to it when it happened." (Doc. 39-15 at 2). She thus declined to dismiss the case and invited Natus to send more evidence or make a settlement offer while she awaited resolution of Natus's pending Motion to Dismiss Amended Complaint. (*Id.* at 3).

Natus followed up with a "Second Letter" (Doc. 39-11) noticing Wright that, unless the case was voluntarily dismissed with prejudice within twenty-one days, it would file a motion for sanctions under Federal Rule of Civil Procedure 11 and pursue the cost of defense.[3] (*Id.* at 7). In addition to the evidence discussed above, the Second Letter contained a System Proposal (Doc. 39-3), which post-dated Bello's surgeries by several days and memorialized Natus's offer to perform a software upgrade in the future. Natus also included a corresponding Purchase Order (Doc. 39-4), dated May 11, 2021.

[3] The record does not reflect that Natus served a Rule 11 motion corresponding to its Second Letter. *See* Fed. R. Civ. P. 11(c)(2) (prohibiting the filing a Rule 11 motion "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service" of the motion upon the non-moving party).

Natus represented to Wright that this evidence showed "that software updates performed by Natus were well-documented and thus . . . were not performed without advising Wolfson or in an unannounced manner." (Doc. 39-11 at 3). Natus further argued that it had "establish[ed] that th[e] Natus software upgrade was arranged for after [] Bello's April 15, 2021 [] procedure, and thus did not occur 'a few days earlier' than the procedure as the Amended Complaint alleges." (*Id.* at 4). Wright again declined to dismiss her claims while a motion to dismiss was pending, claiming that her allegations could be corroborated by "several doctors that were in the room during the surgery" and, apparently, by a law firm that investigated the incident for several months before she decided to file the Complaint. (Doc. 39-16 at 2). Additionally, Wright argued that Natus had failed to provide "records to support the idea that no update took place during th[e relevant] time frame." (*Id.*).

Thereafter, the Court struck the Amended Complaint as untimely and a shotgun pleading and dismissed the Complaint as a shotgun pleading with leave to amend. (Doc. 30 at 4). Wright quickly filed the Second Amended Complaint, prompting a "Third Letter" (Doc. 39-13), in which Natus stated that it would file a motion for Rule 11 Sanctions "[a]bsent voluntary dismissal of Plaintiff's claims within [ten] days." (*Id.* at 8). In addition to the evidence previously disclosed to Wright, the Third Letter included Update Instructions (Doc. 39-2) corresponding to Natus's January 2021 NeuroWorks software update. The Update Instructions reflected that Natus's software update was installable by its end users, but that Natus would assist, if required, by way of remote access. (*Id.* at 2). Natus argued that this document "confirm[ed] that Natus . . . cannot[] unilaterally

perform undisclosed updates on customer software." (Doc. 39-13 at 5). No reply from Wright appears in the record.

On February 25, 2026, Natus served a Motion for Rule 11 Sanctions upon Wright. (Doc. 39-14 at 2; *see also id.* at 158–178). The Motion was supported in part by the Affidavit of Chad Lackland, (*id.* at 4–7), who is the Senior Director of Service Management at Natus. Lackland swore that—and described why—it was "not possible for Natus to alter a customer's NeuroWorks software (whether through an update or an upgrade) without the knowledge and participation of that customer in the process." (*Id.* at 7). Upon reviewing relevant business records, Lackland thus concluded that no NeuroWorks update took place at Wolfson between January 1, 2021, and April 23, 2021. (*Id.*). Wright voluntarily dismissed the Second Amended Complaint nineteen days after being served with the Motion and Affidavit. (*See* Doc. 36 at 1; Doc. 39-14 at 2).

Pursuant to 28 U.S.C. § 1927, Natus now seeks reasonable attorney's fees and costs incurred as a result of defending in this action. (*See generally* Doc. 39).

## II. LEGAL STANDARD

Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An attorney multiplies proceedings by engaging in "dilatory tactics" that extend the litigation beyond its natural endpoint, *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010), or by precipitating "proceedings that would not have been conducted otherwise," *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). "[A]n attorney multiplies proceedings 'unreasonably and vexatiously' . . . only when the attorney's

conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). "A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). This is an objective inquiry, though "the moving party may still rely on evidence of subjective bad faith to make th[e] showing." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). Finally, sanctions imposed under § 1927 "must bear a financial nexus to the excess proceedings." *Peterson*, 124 F.3d at 1396.

In short, § 1927 "imposes a 'high standard' that requires the moving party to show that the other side engaged in behavior that 'grossly deviates from reasonable conduct.'" *Hyde*, 962 F.3d at 1310 (quoting *Amlong*, 500 F.3d at 1240, 1242). "[A] district court may address a sanctions motion based on . . . § 1927 even if it lacks jurisdiction over the underlying case." *Id.*

## III. DISCUSSION

As an initial matter, Natus's Motion fails to comply with Local Rule 3.01(g). Wright argues that this failure provides an independent basis for denying the Motion.[4] Wright is correct, and the parties have previously been warned that failing to comply with the Local Rules and the Court's Standing Orders could result in the summary denial or striking of filings. (Doc. 30 at 1 n.1). However, the Court maintains discretion to decline taking such actions, and here, the Court will proceed to consider the instant Motion despite Natus's

[4] Natus sought leave to address this and other arguments in a reply, but the Court denied its request. (*See* Doc. Nos. 42, 43).

failure to comply with the Local Rules. Likewise, the Court will consider Wright's Response in Opposition despite her failure to comply with the Court's April 2, 2026 Standing Order.

Secondly, Natus seeks attorney's fees and costs associated with its defense from either the date this lawsuit was filed, the date it served its First Letter, the date the Court dismissed the Complaint with leave to amend, or the date Wright filed the Second Amended Complaint. "[T]he language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has begun." *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006); *see also Kenny v. Deutsche Bank Nat'l Tr. Co.*, No. 2:21-cv-9, 2022 WL 580563, at *2 (M.D. Fla. Feb. 24, 2022). Because one cannot "multipl[y] . . . proceedings" that do not yet exist, Natus cannot recover expenses "incurred because of" Wright's filing of the initial Complaint. 28 U.S.C. § 1927. Nor, for that matter, "can counsel be sanctioned [under § 1927] for conduct committed in [] state court proceedings" prior to removal. *Smith v. Psychiatric Sols., Inc.*, 864 F. Supp. 2d 1241, 1269 (N.D. Fla. 2012).

As to the merits, Natus argues that Wright unreasonably and vexatiously multiplied the proceedings in this action by making allegations based on unverified hearsay. Specifically, Natus contends "that the sole factual basis of this Action is premised on . . . the supposed conversation between Tiffani Higdon and someone at Natus." (Doc. 39 at 16). Natus omits discussion of the service log it sent to Wright prior to the initiation of this litigation, which shows that Higdon called Natus on the day of Bello's second surgery as Wright consistently alleged. (*See* Doc. 6, ¶ 13; Doc. 12, ¶ 14; Doc. 31, ¶ 14; Doc. 39-18 at 4). As mentioned previously, this allegation is potentially inconsistent with

Bello's "surgeon" discovering the alleged malfunction after "calling Natus during . . . surgery." (*E.g.*, Doc. 12, ¶ 22). But the Court is skeptical that § 1927 is concerned with potentially inconsistent allegations, and Natus offers no authority to suggest that it is. In addition, the authority Natus does cite to is easily distinguishable, despite its claims that *Barrios v. Regions Bank*, No. 5:13-cv-29-Oc, 2013 WL 12156675 (M.D. Fla. Aug. 21, 2013), *adopted* 2013 WL 5230653 (M.D. Fla. Sept. 16, 2013), and *Oliva v. NBTY, Inc.*, 583 F. App'x 877 (11th Cir. 2014), are "directly on point" with this case. (Doc. 39 at 15).

*Barrios* was "one of seven similar quiet title actions filed in the Ocala Division" by the same attorney. 2013 WL 12156675, at *1. Each case was based on the theory "that failure to acknowledge in writing a recorded note, mortgage or assignment somehow creates a possible cloud on [] title. *Id.* In dismissing the initial complaint, "[t]he Court explained that Plaintiff's argument . . . [was] frivolous as it [wa]s unsupported by any [relevant] legal authority," and that, in any event, "Plaintiff's allegations [were] directly rebutted by the exhibits attached to his Complaint." *Id.* at *2. Nonetheless, the court granted leave to amend the complaint to correct noted deficiencies and expressly denied leave to add new claims. *Id.* The plaintiff's amended complaint not only flouted the court's restriction on adding new claims but, once again, was "based upon a legal theory that had absolutely no chance of success and which [could not] be characterized as reasonable arguments to change existing law." *Id.* at *5; *see also id.* at *3–4. In addition to filing a "frivolous Amended Complaint" after being served a Rule 11 safe harbor letter, plaintiff's counsel unreasonably and vexatiously multiplied the proceedings by filing an unfounded motion to remand, a spurious, last-minute emergency motion for extension of

time, and an unsupported opposition to the defendant's motion to dismiss. *Id.* at *6. The Court declines to patronizingly analyze each of the material differences between *Barrios* on the one hand and this case on the other. Suffice it to say that, here, Wright did not assert a novel and foundationless legal theory, did not engage in frivolous motion practice, did not disregard the Court's instructions regarding amendment, and did not refuse to withdraw her claims after being served with a Rule 11 motion.

Nor is *Oliva* persuasive in light of the record here. The *Oliva* plaintiffs' attorney was sanctioned $60,865.18 for attorney's fees and costs that the defendant incurred in responding to three motions. 583 F. App'x at 878. The first, a motion to strike the defendants' motion for summary judgment, was found to be frivolous and contain known or reckless false representations. *Id.* at 881. The second, a motion to permit the addition of a punitive damages claim, was "baseless" and filed "a month after the close of discovery as a tactic to ambush the [] defendants." *Id.* The third, a motion to present spoliation evidence, "was motivated [either] by bad faith or reckless disregard for the truth of the allegations." *Id.* at 882. Wright, on the other hand, engaged in no motion practice outside of responding to Natus's first Motion to Dismiss and Request for Oral Argument. Upon review, Wright's oppositions were not objectively frivolous. (*See* Doc. Nos. 19–20). Nor do they appear to have been dilatory, or lead to "proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396. Likewise, the Court agrees with Wright that the allegations she raised in the First and Second Amended Complaints were, at most, "weak" or "speculati[ve]," but "not entirely without foundation." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1182 (11th Cir. 2005) (quotation omitted).

Natus also cites to *Chapman & Cole v. Itel Container International B.V.*, wherein the Fifth Circuit upheld Rule 11 sanctions against a defendant who raised a meritless RICO counterclaim "to [drive up] the cost of litigation," for the proposition that "fil[ing a] complaint based on unverified hearsay[ is] not a sufficient basis upon which to subject one to the burdens of complex litigation and heavy legal costs." 865 F.2d 676, 683–85 (1989) (quotation omitted). *Chapman* is not binding, however, and even if it was, "Rule 11 cases do not dispose of the issues arising under § 1927." *Amlong*, 500 F.3d at 1241 n.1. Indeed, because "the filing of a meritless claim is normally the purview of Rule 11," § 1927 sanctions are appropriate only where an attorney "delay[s] the judicial proceedings *after* [filing a frivolous] complaint." *Peer*, 606 F.3d at 1314 (emphasis added); *see also Peterson*, 124 F.3d at 1396 ("[Section] 1927 is not a 'catch-all' provision for sanctioning objectionable conduct by counsel."). Here, Natus essentially argues that Wright delayed the proceedings by refusing, for a time, to dismiss her claims. But Wright eventually did dismiss her claims. Equally important, she did so both within Rule 11's twenty-one-day safe harbor period and after receiving the Lackland Affidavit, which the Court agrees was the most powerful evidence produced by Natus. (*See* Doc. 41 at 9 (Wright, arguing that the Lackland Affidavit was "[t]he only potentially compelling affidavit given to [her]")).

In short, even if Wright multiplied the proceedings in this case by amending her complaint, or by initially refusing to voluntarily dismiss her claims, Natus falls far short of showing that Wright acted egregiously and in bad faith—the "touchstone" of the Court's § 1927 inquiry. *Schwartz*, 341 F.3d at 1225.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED** and **ADJUDGED** that Defendant's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (Doc. 39) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on August 27, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record